IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI PAYNE,<br><br>           Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>           Defendant.<br>                                                        / | No. C 12-04909 WHA<br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DENYING DEFENDANT'S<br>CROSS-MOTION FOR<br>SUMMARY JUDGEMENT** |

**INTRODUCTION**

In this social security appeal, this order finds that the administrative law judge committed legal error when he did not order a consultative examination and failed to complete a full RFC assessment. Accordingly, plaintiff's motion for summary judgment is **GRANTED**. Defendant's cross-motion for summary judgment is **DENIED**. Plaintiff's action is therefore **REMANDED**.

**STATEMENT**

This action boils down to whether the ALJ's duty to develop the record in this social security appeal required the ALJ to order an additional physical consultative examination. This order finds that it did because plaintiff met her burden of proving disability and the ALJ's residual functional capacity assessment was inadequate and incomplete.

1.  **PROCEDURAL HISTORY.**

On April 10, 2009, plaintiff Lori Payne applied for disability insurance benefits and supplemental security income. Plaintiff alleged that she has been unable to work since April 1,

1  2008, due to osteoarthritis of the left knee (AR 198, 328).  Plaintiff was insured through

2  March 13, 2013.  Her application was denied both initially and upon reconsideration (AR

3  56–69).  An administrative hearing was timely requested (AR 62).

4       On October 19, 2010, plaintiff had a hearing before ALJ Richard Laverdure (AR 22–41).

5  The ALJ rendered a decision on January 11, 2011, finding that plaintiff was not disabled

6  (AR 16).  Plaintiff requested administrative review (AR 5).  The Appeals Council denied the

7  request (AR 1).  Plaintiff filed the instant action on September 19, 2012, seeking judicial review

8  pursuant to 42 U.S.C. 405(g).  The parties now cross-motion for summary judgment.

9       **2.**   **TESTIMONY AT THE ADMINISTRATIVE HEARING.**

10       At the hearing before ALJ Laverdure, plaintiff was examined by both the ALJ and

11  her attorney, Tony Arjo.  Plaintiff testified that she had worked part-time as a telemarketer and

12  full-time as an in-home care provider.  She testified that she had to quit both jobs due to her left

13  knee pain (AR 25–26).  Due to her impairment, she could stand or walk for only twenty to thirty

14  minutes before she had to take approximately a ten-minute break (AR 27).

15       Plaintiff was questioned about missing a previously scheduled consultative examination

16  and several other appointments at the Highland Campus of Alameda County Medical Center

17  (AR 31–34).  Plaintiff said she was hospitalized in Las Vegas during the time she was scheduled

18  for the consultative examination in California.

19       Plaintiff then testified that she also sought mental health treatment for depression due

20  to homelessness and admitted to using cocaine once (*id*. at 35).  Plaintiff said she was on

21  medications for pain and mental health (AR 26, 29).

22       **3.**   **MEDICAL EVIDENCE.**

23       The medical evidence was summarized in the ALJ's decision (AR 12–16).  This order

24  will briefly review the findings of each physician who examined her.

25       **A.**   **University Medical Center in Las Vegas.**

26       Plaintiff was admitted to University Medical Center for chest pain on June 17, 2009.

27  During that hospital visit, plaintiff tested positive for cocaine (AR 269).  Plaintiff was discharged

28

several days later after a battery of tests that included an x-ray of her knee. Dr. Charles Hales reported that her knee had "mild degenerative change with small osteophytes" (AR 276).

Plaintiff was also treated for her chest pain. She received a heart catheter and subsequent Angio-Seal (AR 244). Because of her hospitalization in Las Vegas, plaintiff missed her consultative examination on June 19 (AR 301).

### B.  Dr. Watson's Examination.

Plaintiff was examined by Dr. Geoffrey Watson of Alameda County Medical Center in September 2009. Dr. Watson reported that plaintiff had arthritis of the left knee that prevented her from working, but indicated that her inability to work would be temporary. During that interval, however, Dr. Watson noted that plaintiff could work only six hours per day (AR 303–04).

### C.  Highland Hospital Medical Records.

Plaintiff's medical records from Highland Hospital in Oakland cover February 27, 2009, to December 24, 2009. Her medical records noted on February 27 that plaintiff missed an appointment at an orthopedic clinic (AR 335). Plaintiff's medical records at Highland Hospital included reports for two separate x-rays: June 13, 2008, and August 29, 2009. The June 2008 x-ray revealed narrowing in both knees, osteophytosis in both knees, and "joint space narrowing" (AR 329). The August 2009 report noted "tricompartmental osteoarthritis" in the left knee.

In December 2009, Dr. Peter Slabaugh of Highland Hospital outlined plaintiff's condition. He found that though she had joint pain and mild osteoarthritis, she also had "good motion, no deformity, no instability, [and] no effusion" (AR 328). Dr. Slabaugh concluded that plaintiff "should be limited from doing any work that requires prolonged standing or ambulation on a semi permanent [sic] basis" (AR 328).

### D.  Alameda County Medical Center Medical Records.

Plaintiff's medical records at Alameda County Medical Center covered January 3, 2008, to August 12, 2010. Her knee pain was documented throughout that time. On January 3, 2008, Dr. McCartney reported that an MRI had revealed that plaintiff had torn the meniscus of her left

1  knee (AR 326). On August 12, 2010, he noted that plaintiff had obtained vicodin "on the street"
2  and that plaintiff had missed an orthopedic appointment at Highland Hospital twice (AR 305,
3  320). It is unclear whether these appointments were the second and third missed orthopedic
4  appointment or if one of them was the same as recorded by Highland Hospital on February 27,
5  2009.

## ANALYSIS

### 1.  LEGAL STANDARD.

A decision denying disability benefits is upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ is upheld.

Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. The ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, (iv) whether the claimant is capable of performing his or her previous job, and (v) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040.

### 2.  THE ALJ'S FIVE-STEP ANALYSIS.

In his written decision, ALJ Laverdure found at step one of the sequential evaluation process that there was "no evidence of substantial gainful activity since" the alleged onset of

the disability (AR 12). As such, disability was not precluded on the basis of work activity. This determination is not in dispute. At step two, the ALJ found that plaintiff's bilateral osteoarthritis of the knees was a severe impairment that "significantly limits her ability to perform basic work activities." This determination is also not in dispute. The ALJ's step three analysis found that plaintiff's condition does not qualify as "an impairment or combination of impairments that meets or medically equals one of the listed impairments" in Appendix 1 (*id*. at 13). This determination is not disputed.

At step four, the ALJ determined that plaintiff had a residual functional capacity (RFC) to perform "light work" except she "requires the option to sit or stand at will during the workday" (AR 13). Based on this determination, the ALJ found that plaintiff could do no past relevant work because her past work was as an in-home care attendant, which required exertion beyond what plaintiff could perform (*id*. at 15). At step five, the ALJ considered plaintiff's RFC and other factors to determine whether plaintiff could perform other work. The ALJ found that plaintiff could perform "jobs that exist in significant numbers in the national economy" (*ibid*.). The ALJ relied on the testimony of a vocational expert to make this finding (*id*. at 16).

In order to determine plaintiff's RFC, the ALJ reviewed plaintiff's medical and opinion evidence. The ALJ discounted Dr. Watson's opinion that plaintiff was only able to work six hours per day, but accorded weight Dr. Slabaugh's opinion that plaintiff "should be limited from doing any work that requires prolonged standing or ambulation on a semi permanent basis." The ALJ ultimately found that plaintiff's "medically determinable impairments could reasonably be expected to cause some alleged symptoms," but that the "intensity, persistence and limiting effects of these symptoms" were lesser than reported (*id*. at 15).

Plaintiff's motion now argues that the ALJ did not adequately develop the record and therefore did not have adequate evidence "to determine the function-by-function limitations produced by Ms. Payne's knee impairment" (Dkt. No. 9 at 4). The ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Plaintiff specifically argues that the ALJ erred in not obtaining a "consultative examination to supplement the record" (*ibid.*). Plaintiff twice

5

requested a consultative examination before and after the hearing with the ALJ (AR 228, 231). Plaintiff argues that Dr. Slabaugh's opinion was inadequate to determine the extent of the plaintiff's limitations (Br. at 4). Plaintiff further argues that the ALJ was required to obtain a consultative examination under *Reed v. Massanari*, 270 F.3d 838 (9th Cir. 2001). This order agrees.

### 3. THE ALJ ERRED IN DENYING PLAINTIFFS REQUEST FOR A CONSULTATIVE EXAMINATION AND IN FAILING TO CONDUCT A FUNCTION-BY-FUNCTION RFC ASSESSMENT.

An ALJ has an independent "duty to fully and fairly develop the record and to assure that [a social security] claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation and internal quotation marks omitted). The narrow question in the instant appeal is whether this duty *required* the ALJ to order an additional physical consultative examination of Ms. Payne. "An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination." *Reed*, 270 F.3d at 842 (citations omitted). The types of cases that "normally require a consultative examination" include those in which the "additional evidence needed is not contained in the records of [the claimant's] medical sources," and those involving an "ambiguity or insufficiency in the evidence [that] must be resolved." *Reed*, 270 F.3d at 842 (alterations in original) (citations omitted).

The record before the ALJ was insufficient because a proper RFC assessment of the plaintiff's abilities was never completed by a medical professional or the ALJ. An RFC is an administrative assessment of the extent to which plaintiff's medically determinable "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. 404.1545(a)(1). In other words, RFC measures the "most [a claimant] can still do despite [the claimant's] limitations." *Id*. The RFC assessment considers the claimants's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p.

6

As our court of appeals said in *Reed*, a proper RFC assessment requires a function-by-function analysis of a claimant's impairment:

> Notably absent from the record before the ALJ was any assessment of Reed's RFC on a function-by-function basis, which could then have been compared with a description of the functions actually required of Reed in her previous employment. Lacking a function-by-function analysis, the ALJ based his conclusion that Reed could perform her past work on Dr. Teitel's *categorical* RFC assessment, *i.e.*, that Reed retained the capacity to complete work at the light exertional level. A Social Security Administration ruling specifically warns against this practice of determining a claimant's ability to perform past work on the sole basis of a categorical RFC assessment: "[T]he RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."

*Reed*, 270 F.3d at 843 n.2 (citations omitted).

In the instant case, the ALJ based his RFC assessment on Dr. Slabaugh's statement that plaintiff's knee showed "good motion, no deformity, no instability, no effusion . . . mild osteoarthritis of primarily the medial compartment consistent with her symptoms . . . [Claimant] should be limited from doing any work that requires prolonged standing or ambulation on a semi permanent [sic] basis" (AR 14). The Social Security Administration has outlined how an RFC must address exertional limitations:

> At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do . . . Therefore, it is necessary to assess the individual s [sic] capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level . . . Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting [sic], standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours") . . . .

SSR 96-8p.

Dr. Slabaugh's statement did not constitute a function-by-function analysis because it did not approximate how long plaintiff could stand or ambulate and did not indicate her lifting, carrying, or postural limitations as outlined by the Social Security Administration. SSR 96-8p.

7

Another action in this district was remanded to the ALJ for similarly failing to follow SSR 96-8p in assessing the claimant's RFC. *Arik v. Astrue*, No. C 08-5564, 2010 WL 6490066 (N.D. Cal. March 29, 2010) (Judge Saundra Brown Armstrong). The ALJ in *Arik* failed to assess the plaintiff's impairment on a function-by-function basis. "Such an assessment is necessary so that the Plaintiff's RFC could then have been compared with a description of the functions actually required of [plaintiff] in her previous employment." *Id*. at *5 (internal quotation marks omitted). The *Arik* decision remanded the action to the ALJ for compliance with SSR 96-8p. *Id*. at *6. This order finds that ALJ Laverdure did not properly determine plaintiff's RFC under SSR 96-8p. In order to address this deficiency, plaintiff's action is **REMANDED**.

### 4. THE ALJ DID NOT FULFILL HIS DUTY TO DEVELOP THE RECORD.

Defendant argues that the ALJ fulfilled his duty to develop the record by leaving the record open for thirty days after the hearing (AR 5). Defendant's reliance on *Tidwell v. Apfel*, 161 F.3d 599 (9th Cir. 1999), is inapposite. Unlike the instant case, *Tidwell* dealt with medical evidence that was internally ambiguous. At the hearing in *Tidwell*, the ALJ concluded that the medical evidence suggesting that the claimant had a severe disability was inadequate because it was merely a "check-the-box" form. The ambiguity in *Tidwell* related only to the basis of the doctor's opinion. The ALJ left the record open for the claimant to supplement the check-the-box form. The court held that the ALJ had fulfilled his duty to develop the record by leaving the record open. *Id*. at 602. *Tidwell* itself relies on *Smolen,* 80 F.3d 1273. In *Smolen*, our court of appeals established a method for fulfilling an ALJ's duty to develop the record when an ALJ needs to know the basis for a medical opinion. The ALJ can leave the record open to allow the claimant to supplement the record with evidence for the basis of the doctor's opinion. *Id*. at 1288. The use of this narrowly tailored solution would be inappropriate here. Rather than simply lacking the basis of a medical opinion, the record here lacked a function-by-function determination of the plaintiff's impairment, which is a central element of a complete RFC.

8

Even if we were to use the solution in *Tidwell* here, the ALJ did not inform the plaintiff about the deficiency in the record. Rather, the ALJ left the record open after the hearing to allow plaintiff to submit specific medical records they had *discussed during the hearing*. Early in the hearing, the ALJ stated: "I'll permit you to submit [the Highland Records] post-hearing. But you better get right on it if there's anything there" (AR 33). The ALJ ended the hearing by asking plaintiff's attorney "[h]ow much time do you think you need to get those Highland records or anything else you wish to submit?" (AR 40). Defendant's cross-motion now argues that the ALJ fulfilled his duty because plaintiff could have supplemented the record after the hearing (Dkt. No. 10 at 6). Though the ALJ's "anything else" phrase was open-ended, it was not clear that the record was being left open because plaintiff needed to supplement an insufficient record. Plaintiff apparently believed the record was being left open only for the requested records because after the hearing, plaintiff renewed her request to have a consultative examination. Unlike in *Tidwell*, ALJ Laverdure did not voice his concern about needing more information to complete an RFC assessment. *Tidwell*, 161 F.3d at 602. Plaintiff had no basis for knowing that she could supplement the record beyond the evidence ALJ Laverdure requested. Another decision in this district has distinguished *Tidwell* and remanded for this same reason. *Uhl v. Apfel*, No. C-00-2470, 2001 WL 679837, at *2 n.7 (N.D. Cal. June 6, 2001) (Magistrate Judge Bernard Zimmerman). This order finds that the ALJ did not fulfill his duty to develop the record by leaving the record open after the hearing.

### 5. PLAINTIFF'S MISSED APPOINTMENTS WERE NOT GROUNDS FOR REFUSING TO ORDER A CONSULTATIVE EXAMINATION.

The ALJ's decision declined to order a consultative examination because of "her past failure to attend scheduled appointments and because of the weakness of the medical evidence of record" (AR 11). This order has previously discussed the nature of the medical evidence and finds that because it met the threshold of establishing the severity of plaintiff's impairment, any "weakness" necessitated a consultative examination.

With regard to the missed appointments, defendant cites no authority to show that an ALJ can refuse to order a consultative examination because the claimant missed medical appointments. There is, however, authority on this point. Social Security regulations state that

9

if a claimant does not have a "good reason" for failing or refusing to take part in consultative examinations or tests arranged by the ALJ, then the ALJ may make a negative disability determination based solely on their failure to appear. 20 C.F.R. 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled"). There is also a court decision that has upheld an ALJ's refusal to order consultative examinations because the claimant had missed multiple consultative examinations scheduled by the ALJ. *McCann v. Astrue*, No. EDCV 09-1432, 2010 WL 2803964 (C.D. Cal. July 15, 2010). In that decision, however, the court found that "[n]either Plaintiff [sic] nor her attorney have established, or even attempted to argue, that she had 'good cause' for missing the scheduled appointments." *Id*. at *4.

The instant case is different. Plaintiff was hospitalized with chest pain for the six days before, during, and after her consultative examination appointment (AR 244–300). Section 416.918(b)(1) states that "illness on the date of the scheduled examination or test" constitutes good cause for missing a consultative examination appointment. The record is not clear about the exact cause of plaintiff's chest pain. Plaintiff tested positive for cocaine during her hospitalization. She also tested positive for ischemia, which is a condition characterized by insufficient blood supply to bodily tissues (AR 244). Though the ALJ evidently found plaintiff's cocaine use significant, substance abuse is evaluated after a completed disability determination to see whether the claimant's substance abuse contributed to the disability itself. 20 C.F.R. 404.1535. Here, there is no evidence that plaintiff's knee pain is related to her potential substance abuse.

The ALJ also seemed to consider plaintiff's other missed medical appointments as grounds for not ordering a consultative examination. Section 416.918 only provides grounds for making a negative disability determination when a claimant misses an appointment *arranged by the ALJ*: " If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you . .

10

1  . we may find that you are not disabled or blind." This order finds that ALJ Laverdure erred in
2  not ordering a consultative examination because of plaintiff's missed appointments. On
3  remand, the ALJ must order a consultative examination. Plaintiff must not miss the exam except
4  for good cause.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED**. Defendant's cross-motion for summary judgment is **DENIED**. The ALJ must refer plaintiff to a consultative examination and complete a proper RFC on remand. Plaintiff's action is therefore **REMANDED**.

**IT IS SO ORDERED.**

Dated: December 13 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE